IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES OTERO,

     Plaintiff,

v.                                                                    No. 08-CV-907 JC/LFG

STATE OF NEW MEXICO CORRECTIONS
DEPARTMENT, CHARLENE KNIPFING in her
individual and official capabilities, DAVID
JABLONSKI in his individual and official capacities,
EDWARD GONZALES in his individual and official
capacities, DENIS PORTER in his individual and
official capacities,

     Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment

as to Counts I, II, III, IV and VI (Doc. 26), filed March 20, 2009 ("Motion").  The Court has

reviewed the parties' briefing in this matter and, being otherwise informed in the premises,

grants the Motion in part as set forth below.

## I.    BACKGROUND

Plaintiff James Otero brought suit against his employer, the State of New Mexico

Department of Corrections ("Corrections Department"), and its Director of Probation & Parole

(Charlene Knipfing), its Deputy Director of Probation & Parole David Jablonski, its Interstate

Compact Administrator Edward Gonzales (who is also Plaintiff's supervisor), and its Education

Bureau Programs Manager Denis Porter.  Otero, who is still employed by the Corrections

Department, contends that Defendants discriminated and retaliated against him because he is a

veteran of the United States military (Counts I & II) and also because he is allegedly disabled

with post-traumatic stress disorder, or PTSD (Count III).  According to Plaintiff, Defendants'
alleged actions also violate the New Mexico Human Rights Act (Count IV) and have allegedly
created a hostile work environment (Count VI).

These allegations are based primarily upon the events of May 6-7, 2008.  On May 6,
Plaintiff attended a mandatory training led by Defendant Porter.  *Am. Complt.* at ¶¶ 19 & 21.
Rather than sit in his assigned seat, Plaintiff, who contends his assigned seat was full, sat at the
back of the room with his back against the wall.  *Id.* at ¶ 22.  Plaintiff says he prefers to sit with
his back to the wall since his return from active duty in Iraq.  *Id.*  Due to ongoing medical
treatment that allegedly made his eyes sensitive to light, Plaintiff was also wearing sunglasses.
*Id.* at ¶ 23.  At some point during the training, Defendant Porter told Plaintiff he was being
disruptive and called Defendants Jablonski and Knipfing for assistance.  *Id.* at ¶¶ 25, 31-34.
After speaking with Defendants Jablonski and Knipfing, Plaintiff contends he asked permission
to leave for the day.  *Id.* at ¶ 44.

The next day, May 7, 2008, Plaintiff contends that Jablonski posted a memo in the
Corrections Department building that "resembled a fugitive posting" containing Plaintiff's
photograph and information to the effect that Plaintiff was on administrative leave and was
denied access to the premises.  *Id.* at ¶¶ 46-48.  The same day, Plaintiff was informed by
Defendant Jablonski that he would be placed on administrative leave, that he was accused of
"possible misconduct," and that he would be required to make daily phone calls to his
supervisor, Defendant Gonzales.  *Id.* at ¶¶ 50-52.  Although Defendant Jablonski issued a letter
of reprimand to Plaintiff on June 6, 2008, *id.* at ¶ 54, this letter was removed from Plaintiff's
personnel file, which presently contains no documents reflecting the events of May 6-7, 2008,

*Resp.* at 4 (admitting Defendant's undisputed material facts 26, 27, and 28).

Apart from these allegations, Plaintiff also claims generally that: (1) he "has repeatedly requested accommodations for his PTSD but Defendants have ignored him, *id.* at ¶ 55; (2) "Defendant Gonzales harasses [him] about his dress and hair on a regular basis," *id.* at ¶ 62; (3) Defendants have discussed his medical condition and employment matters in public, *id.* at ¶ 64; and (4) Defendants have denied his request to attend annual meetings of the Interstate Compact Commission as well as failed to inform him of training opportunities, *id.* at ¶¶ 65 & 67.

The Court has previously dismissed Plaintiff's allegations pursuant to 28 U.S.C. § 1983 for violations of his liberty and/or privacy rights.  *See Order Granting Defs.' Mot. For Summ. Jdgmt. As to Count V*, filed April 22, 2008 (Doc. 46).  The Court has also dismissed Plaintiff's tort claims in Counts VII through XII for failure to state a claim in that the Defendants are entitled to sovereign immunity for these claims.  *See Order Granting Defs.' Mot. For Summ. Jdgmt. As to Counts VII, VIII, IX, X, XI, and XII*, filed April 1, 2009 (Doc. 38).

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c).  A "genuine" issue of fact exists where the evidence is such that a reasonable jury could resolve the issue either way.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In response to a motion for summary judgment, a party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as

otherwise provided in this rule—set out specific facts showing a genuine issue for trial."

FED.R.CIV.P. 56(e)(2).  The party opposing summary judgment must present specific, admissible

facts from which a rational trier of fact could find in his favor.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  However, the Court must consider the

record, and all reasonable inferences therefrom, in the light most favorable to the party opposing

the motion.  *Adler* at 670 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 265).

## III.    DISCUSSION

### A.    USERRA Discrimination (Count I)

The Uniformed Services Employment and Reemployment Rights Act ("USERRA") was

enacted in part "to prohibit discrimination against persons because of their service in the

uniformed services."  38 U.S.C. § 4301(a)(3).  In addition to providing reemployment rights,

USERRA also prohibits discrimination against members of the military.  38 U.S.C. § 4311.

> A person who is a member of, applies to be a member of,
> performs, has performed, applies to perform, or has an obligation
> to perform service in a uniformed service shall not be denied initial
> employment, reemployment, retention in employment, promotion,
> or any benefit of employment by an employer on the basis of that
> membership, application for membership, performance of service,
> application for service, or obligation.

38 U.S.C. § 4311(a).

For purposes of this statute the term "employer" is defined as "any person, institution,

organization, or other entity that pays salary or wages for work performed or that has control

over employment opportunities."  38 U.S.C. § 4303(4)(A).  A state is specifically enumerated as

an employer to whom USERRA applies.  38 U.S.C. § 4303(4)(A)(iii).

In analyzing USERRA discrimination claims, the Court utilizes the evidentiary scheme

4

for cases arising under the National Labor Relations Act.  *Lewis v. Rite of Passage, Inc.*, 217 Fed.Appx. 785, 786 (10th Cir. 2007).  Initially, Plaintiff must prove "'by a preponderance of the evidence that [his or her] military service was a substantial or motivating factor in the adverse employment action.'"  *Id.* (quoting *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed.Cir. 2001) (alterations in original quotation)).  Plaintiff must show that Defendants "'relied on, took into account, considered, or conditioned [their] decision'" on Plaintiff's military status.  *Id.* (quoting *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005)).  "In the summary judgment context, the employee must establish a genuine issue of material fact as to whether his military status was a motivating factor in the adverse employment action to survive summary judgment."  *Id.* at 787.

To the extent Plaintiff is able to meet his initial burden, "'the burden shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action.'"  *Id.* (quoting *Sheehan*, 240 F.3d at 1014).  "To prevail on summary judgment, the employer must [] establish not just that it had a legitimate basis for taking the adverse employment action, but as a matter of uncontroverted fact that it would have taken the adverse employment action regardless of the employee's military status."  *Id.* at 787 (citing *Leisek v. Brightwood Corp.*, 278 F.3d 895, 900 (9th Cir. 2002)).

In the present case, Plaintiff does not specify which of the Defendants' alleged "derogatory actions" were discriminatory.  In Count I, Plaintiff contends simply that his "obligations or membership for service in the uniformed services is a motivating factor in all derogatory actions taken against the Plaintiff by Defendants."  *Am. Complt.* at ¶ 80.  He contends, again very generally, that "[t]he harassment and treatment of the Plaintiff, including

the discipline, were each discriminatory and retaliatory acts of reprisal in violation of the

USERRA." *Id.* at ¶ 82.

In terms of specific derogatory acts or instances of discipline, Plaintiff appears to allege

only that Defendant Jablonski wrongfully posted the May 7, 2008 memo in the Corrections

Department facility; that he was placed on paid administrative leave from May 7-28, 2008; and

that he received a letter of reprimand on June 6, 2008, which he admits was later removed from

his file. *See Motion* at 10-12; *Resp.* at 2-4 (admitting these asserted undisputed material facts).

In addition to these instances, Plaintiff also contends that Defendants have wrongfully denied his

request to attend annual meetings of the Interstate Compact Commission. *Resp.* at 4.

Plaintiff therefore is not claiming that Defendants denied him initial employment,

reemployment, retention in employment, or promotion. The question is consequently whether,

by the above-referenced actions, Defendants have denied Plaintiff "any benefit of employment"

as that term is used in 38 U.S.C. § 4311(a). The term "benefit" or "benefit of employment" is

defined by USERRA as

> any advantage, profit, privilege, gain, status, account, or interest
> (other than wages or salary for work performed) that accrues by
> reason of an employment contract or agreement or an employer
> policy, plan, or practice and includes rights and benefits under a
> pension plan, a health plan, an employee stock ownership plan,
> insurance coverage and awards, bonuses, severance pay,
> supplemental unemployment benefits, vacations, and the
> opportunity to select work hours or locations of employment.

38 U.S.C. § 4303(2). Given this definition, the Court cannot find that any of the above actions

amount to denials of any "benefit of employment" in that Plaintiff has not lost any salary, status,

or other benefit as a result of Defendants' alleged actions.

Even assuming that Plaintiff has adequately alleged an instance where he was denied

6

some employment benefit, however, he has failed to show that his military status is a motivating factor for the Defendants' alleged actions.  Plaintiff offers no evidence to suggest that his request to attend the Interstate Compact Commission's annual meetings was denied because of his military status.  *Resp.* at 6 (stating only that Plaintiff is entitled to attend the annual meeting and that Defendants have denied his request to attend).  While Plaintiff claims that Defendant Porter did not treat him in a "rude and aggressive manner" on May 6, 2008 until after Plaintiff had disclosed his status as a veteran of the war in Iraq, he again offers no evidence to indicate that Defendant Porter or any of the other Defendants were motivated to act as they did toward Plaintiff because of his military status.  *See Resp.* at 3.

In fact, Plaintiff admits that "[t]he factual basis of the reprimand was Plaintiff's disruptive actions at the May 6, 2008 Motivational Interviewing Class which led Instructor Denis Porter, the Program Manager in charge, to request Plaintiff to leave the classroom, and Plaintiff's refusal to obey Mr. Porter's instructions, thereby necessitating intervention by Ms. Knipfing and Mr. Jablonski."  *Motion* at 11 (setting forth these facts) and *Resp.* at 8 (admitting the allegations in Paragraph 22 of Defendants' Undisputed Material Facts).  Plaintiff also does not dispute Defendants' sworn affidavit testimony indicating that "nothing Ms. Knipfing or Mr. Jablonski did was based on Plaintiff's status as a military veteran or his PTSD."  *Motion* at 12 and *Resp.* at 3-4.  There being no evidence to indicate that any of Defendants' alleged "derogatory actions" were motivated by Plaintiff's military status, the Court finds that summary judgment should be granted in Defendants' favor as to Plaintiff's USERRA discrimination claim (Count I).

**B.    USERRA Retaliation (Count II)**

7

Employers are further prohibited from discrimination in employment against and may not take adverse employment actions against the following qualified individuals: (1) those who have taken action to enforce protections offered by USERRA, (2) those who have testified in a USERRA proceeding, (3) those who have participated in a USERRA investigation, and (4) those who have exercised a right provided for by USERRA.  38 U.S.C. § 4311(b).  Although it "does not use the term 'retaliation,' the gravamen of [§ 4311(b)] is to prohibit adverse action taken in retaliation for involvement in the assertion of substantive rights established by USERRA." *Quick v. Frontier Airlines, Inc.*, 544 F.Supp.2d 1197, 1208 (D.Colo. 2008).

To support such a claim, Plaintiff must first show that he took an action protected by USERRA.  *Id. (citing Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007) and *Grojean v. FirstEnergy*, 481 F.Supp.2d 878, 884-85 (N.D.Ohio 2007)).  Plaintiff next has the burden of showing by a preponderance of the evidence that his protected action was a substantial or motivating factor in the adverse employment action taken against him.  *Id.* at 1209 (*citing Wallace*, 479 F.3d at 624).  "If the employee satisfies this burden, the employer 'may then avoid liability only by showing ... that [it] would have taken the same action without regard to [Plaintiff's] protected status.'"  *Id.* (*citing Wallace*, 479 F.3d at 624) (alterations in original).

At the outset, Plaintiff does not appear to assert any protected action.  Given that the alleged adverse actions occurred prior to the filing of this litigation, Plaintiff cannot credibly contend he suffered retaliation for testifying in a USERRA proceeding or participating in a USERRA investigation.  There is also no evidence to suggest that Plaintiff exercised USERRA rights or sought to enforce USERRA prior to the adverse actions.  Indeed, there is no mention of possible retaliation on the basis of Plaintiff's military service until Plaintiff's Complaint was

filed.  As a result, the Court cannot find in favor of Plaintiff as to Count II.

Even assuming that Plaintiff could satisfy the initial burden of showing he took action protected by USERRA, Plaintiff has not shown evidence sufficient to survive summary judgment that Defendants' alleged adverse actions were motivated by Plaintiff's military status.  *See* Part A, *infra*.  For this additional reason, Plaintiff's USERRA retaliation claim (Count II) also cannot survive summary judgment and will be dismissed with prejudice.

### C.      Discrimination on the Basis Of Handicap/Disability (Count III)

Plaintiff contends that Defendants violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act by failing to "provide Plaintiff with a reasonable accommodation for his PTSD."  *Am. Complt.* at ¶ 92.  The second element of a prima facie case of discrimination under the ADA is that the Plaintiff must be qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired.  *Mason v. Avaya Communications, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004).  In the event that accommodation is required, "the employee must first demonstrate that an accommodation appears reasonable on its face." *Id.* at 1122.

Contrary to Plaintiff's claims in Count III, it appears that Defendants have been cooperative in terms of accommodating Plaintiff's PTSD.  For example, Plaintiff admits that upon his return from active duty in Iraq, Defendants granted his request for a transfer and for relinquishment of his supervisory duties in favor of a less stressful assignment.  *Motion* at 6; *Resp.* at 2.  Plaintiff also admits that Defendants granted his request for accommodation in the form of a revised work schedule that allowed him to attend group meetings at the Santa Fe Veterans center.  *Motion* at 7; *Resp.* at 2.  Significantly, Plaintiff even admits that he never

requested an accommodation of any kind related to his participation in the May 6, 2008 training

class at issue in this matter.  *Motion* at 9; *Resp.* at 3.

The only accommodation Plaintiff requested that Defendants have denied is Plaintiff's

request "to become a K-9 Officer for NMCD/PPD [Probation and Parole Division]."  *Motion* at

14; *Resp.* at 4.  Plaintiff does not dispute Defendants' assertions that: (1) there is no Canine Unit

in the Corrections Department's Probation and Parole Division; (2) the canine handlers within

the Canine Unit of the Adult Prisons Division must be certified Corrections Officers; (3) Plaintiff

is not a certified Corrections Officer; and (4) there is a waiting list of qualified Corrections

Officers who want to become canine handlers.  *Motion* at 14-16; *Resp.* at 4.

Based on the undisputed facts, Plaintiff cannot prove the second element of a prima facie

case of discrimination.  Initially, Plaintiff is not qualified to serve as a Canine Handler within the

Corrections Department.  Among other things, Canine Handlers within the Corrections

Department Adult Prisons Division must graduate from the Corrections Academy, be certified as

Corrections Officers, and complete two years of experience working in a prison as a Corrections

Officer.  *Motion* at 15 (setting forth qualification requirements of Canine Handlers within the

Corrections Department Adult Prisons Division); *Resp.* at 4 (admitting qualification

requirements as undisputed material facts).  Plaintiff does not argue he has fulfilled any of these

qualifications.  Rather, Plaintiff admits he is a Probation and Parole Officer as opposed to a

certified Corrections Officer and that he works within the Probation and Parole Division rather

than the Adult Prisons Division.  *Motion* at 15; *Resp.* at 4.

Defendants are not compelled in a case such as this to create a new position in order to

accommodate an employee.  *Mason*, 357 F.3d at 1119 (citing *Smith v. Midland Brake, Inc.*, 180

10

F.3d 1154, 1174-75 (10th Cir. 1999) (en banc)).  Moreover, any requested accommodation which fundamentally alters the nature of a position or requires Defendants to change the structure of their business is not a reasonable accommodation.  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1177 (10th Cir. 1999).  As Plaintiff fails to argue there is any accommodation Defendants could offer—short of creating a Canine Handler position within the Probation and Parole Division or ignoring the qualifications for the Canine Handler position within the Adult Prisons Division—to avoid the alleged discrimination, the Court will grant Defendants' Motion for Summary Judgment as to Count III.

### D.     NMHRA Discrimination and Retaliation (Count IV)

The New Mexico Human Rights Act ("NMHRA") provides that it is "an unlawful discriminatory practice for an employer ... to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of ... physical or mental handicap or serious medical condition."  NMSA 1978, § 28-1-7(A).  Because there is no provision in the NMHRA that corresponds to Plaintiff's claims of discrimination on the basis of his military service,  *id.*, the Court understands Plaintiff's NMHRA claims to be related to his alleged PTSD.

The New Mexico Supreme Court has not adopted federal law as its own, but it has held that "it is appropriate to rely upon federal adjudication for guidance in analyzing a claim under the Act."  *Trujillo v. Northern Rio Arriba Coop., Inc.*, 2002-NMSC-004, ¶ 8, 131 N.M. 607, 41 P.3d 333.  For a claim alleging discrimination on the basis of handicap or medical condition, the Supreme Court has noted that "the closest federal counterpart would be the Americans with Disabilities Act*." Id.*  The Supreme Court therefore applied the requirements for a prima facie

case under the ADA to the plaintiff's NMHRA claim in *Trujillo*.  *Id.*

        *1.     Discrimination*

    "A prima facie case of ADA discrimination consists of three elements: the plaintiff (1) is

a disabled person as defined by the ADA; (2) is qualified, with or without reasonable

accommodation, to perform the essential functions of the job held or desired; and (3) suffered

discrimination by an employer or prospective employer because of that disability."  *Kellogg v.*

*Energy Safety Services, Inc.*, 544 F.3d 1121, 1124 (10th Cir. 2008).

      To survive summary judgment, Plaintiff must show that Defendants refused to hire him,

discharged him, demoted him, refused to promote him, or "discriminate[d] against him in matters

of compensation, terms, conditions or privileges of employment."  NMSA 1978, § 28-1-7(A).

Plaintiff does not allege specific facts in this regard; he claims only that "the conduct specified

constitute [sic] violations of the New Mexico Human Rights Act."  *Am. Complt.* at ¶ 96.

      Since Plaintiff is presently employed by the Corrections Department in the same position

as he was employed at the time his lawsuit was filed, there is also no evidence that Defendants

discharged or demoted Plaintiff.  As discussed in Part C, *infra*, it is undisputed that Plaintiff was

not qualified for the Corrections Department's existing position of canine handler.  Thus, no

reasonable jury could find that Defendants discriminated against Plaintiff by refusing to hire or

promote him to the canine handler position.

      Plaintiff's only allegation that even arguably rises to the level of "discrimination ... in

matters of compensation, terms, conditions, or privileges of employment" is his contention that

Defendants have denied his request to attend annual meetings of the Interstate Compact

Commission and have failed to notify him of unspecified training opportunities.  *Am. Complt.* at

¶¶ 65 & 67.  However, Plaintiff offers no evidence to show that Defendants' alleged actions amounted to adverse employment action, or "a tangible, significant, harmful change in the conditions of employment."  *Ulibarri v. State of New Mexico Corrections Acad.*, 2006-NMSC-009, ¶ 16, 139 N.M. 193, 131 P.3d 43 (holding that a supervisor's comments were not sufficient to constitute adverse employment action in the context of a retaliation claim).  Absent some evidence of concrete and harmful changes to the conditions of Plaintiff's employment, the Court will grant Defendants' Motion as to Count IV insofar as it alleges discrimination in violation of the NMHRA.

2.      *Retaliation*

The ADA's retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  In order to establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) that he engaged in protected opposition to discrimination, (2) that his employer took some action which a reasonable employee would have found to be materially adverse or which might have dissuaded a reasonable worker from engaging in the protected opposition to discrimination, and (3) that a causal connection existed between the protected activity and the materially adverse action.  *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007).

Although the parties do not point out any protected activities by Plaintiff, the Court notes that a request for accommodation in and of itself can be a protected activity under the ADA.  *See, e.g., Coleman v. Blue Cross Blue Shield of Kan.*, 487 F.Supp.2d 1225,  (D.Kan. 2007).  In

13

the present case, it appears Plaintiff requested accommodations to his workload in December

2005 and to his work schedule in March 2008. *Motion* at 6-7; *Resp.* at 2. Plaintiff may arguably

also have requested an accommodation in August 2008, when he sought a position as a canine

officer. *Motion* at 14; *Resp.* at 4. Aside from these requests for accommodation, Plaintiff also

filed an EEOC Charge of Discrimination on June 23, 2008, alleging that he was discriminated

against in violation of the ADA on May 6, 2008. An EEOC Charge is recognized as a protected

activity under the ADA. *Proctor*, 502 F.3d at 1208 (noting that "Mr. Proctor clearly engaged in

protected activity when he filed administrative charges with the OFCCP, EEOC, and the Kansas

Human Rights Commission alleging disability discrimination"). Plaintiff has therefore satisfied

the element of protected activity.

The second element of Plaintiff's prima facie retaliation case is also met. In addition to

the events of May 6, 2008, Plaintiff argues in response to the Motion that Defendants have

retaliated against him at unknown times by allegedly denying his request to attend meetings of

the Interstate Compact Commission and failing to notify him of training opportunities. *Resp.* at

6. Plaintiff also complains that his supervisor began harassing him about his dress and hair and

other matters after Plaintiff filed his Union Grievance and notice of tort claim in this matter. *Am.*

*Complt.* at 5-6. Although these allegations may not be sufficient to rise to the level of adverse

employment action in the context of a discrimination claim, actionable retaliation is "not limited

to discriminatory actions that affect the terms and conditions of employment." *Burlington*

*Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 64, 126 S.Ct. 2405, 165 L.Ed.2d 345

(2006) (concerning retaliation claim under Title VII). Rather, retaliation can exist whenever an

employer takes an action "that would have been materially adverse to a reasonable employee." *Id.* at 57.  This includes actions that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 68.  Along these lines, the anti-retaliation provision of the NMHRA broadly prohibits "any form of threats, reprisal or discrimination against any person who has opposed an unlawful discriminatory practice."  NMSA 1978, § 28-1-7(I)(2).

Plaintiff does not allege any direct evidence of causal connection between any of his protected activities and any of the Defendants' adverse actions.  While "[a] retaliatory motive may be inferred when an adverse action closely follows protected activity," the materially adverse action must be "*very closely* connected in time to the protected activity" to justify that type of inference.  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999) (emphasis in original).  *See also Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) (recognizing that absent additional evidence, a three-month separation between the protected activity and the adverse action was too great to justify an inference of causal connection).

In the present case, Defendants actions on May 6, 2008 occurred approximately one month after his requested accommodation to his work schedule on March 31, 2008.  *Motion* at 7; *Resp.* at 2.  While there appears to be no direct evidence that Defendants intended to retaliate against Plaintiff for his requested accommodation on May 6, 2008, a reasonable jury could nonetheless find that a causal connection exists based on temporal proximity alone.  The parties have not provided dates when the alleged retaliation by Defendant Gonzales occurred or when Plaintiffs' requests to attend the Interstate Compact Conference occurred, so the Court is similarly unable to determine that there is no causal connection between any of the protected

activities and these alleged adverse actions.  Likewise, the parties have not indicated when Defendants allegedly failed to inform Plaintiff of training opportunities, so the Court is unable to grant summary judgment as to allegations of retaliation in this regard.  Summary judgment will be denied as to Plaintiff's NMHRA retaliation claims in Count IV.

       **E.**        **Hostile Work Environment (Count VI)**

Plaintiff contends that "the offensive statements and actions by Defendants Knipfing, Jablonski and Gonzales ... were so severe and pervasive that they created a hostile, offensive or abusive working environment for Plaintiff."  *Am. Complt.* at 11-12.  Plaintiff purports to bring his hostile work environment claim pursuant to the ADA, NMHRA, and the Rehabilitation Act. *Id.* at 12.  The Tenth Circuit has recognized that "a hostile work environment is actionable under the ADA."  *Lanman v. Johnson County*, 393 F.3d 1151, 1156 (10th Cir. 2004).  In reaching this conclusion, the *Lanman* court focused on the similarities between the ADA and Title VII, recognizing that "the ADA explicitly provides that '[t]he powers, remedies, and procedures set forth in [Title VII] shall be the powers, remedies, and procedures [the ADA] provides'" and noting that the Tenth Circuit and many other courts "have used similar analyses when interpreting the two statutes."  *Id.* (quoting 42 U.S.C. § 12117(a)).  For this reason, and in light of the dearth of published authority within the Tenth Circuit, the Court will rely upon case law concerning Title VII hostile work environment claims.

The Tenth Circuit has not addressed the question whether USERRA provides a cause of action for hostile work environment or harassment.  Other courts who have confronted this question have found that USERRA does provide for a hostile work environment cause of action, and they have applied the same analysis as hostile work environment claims brought pursuant to

16

Title VII.  *See, e.g., Dees v. Hyundai Motor Mfg. Alabama, LLC*, ___ F.Supp.2d ___, 2009 WL

778700 *6 (M.D.Ala. 2009) (holding that "USERRA-harassment claims, like those under Title

VII should be analyzed using the principle announced by the Supreme Court in *Meritor Savings*

*Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986): harassment is actionable

when it is 'sufficiently severe or pervasive to alter conditions of [the victim's] employment and

create an abusive working environment'").

      "Pervasiveness and severity are independent and equal grounds upon which a plaintiff

may establish this element of a hostile environment claim."  *Tademy v. Union Pac. Corp.*, 520

F.3d 1149, 1161 (10th Cir. 2008) (quoting *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th

Cir. 1998)).  Thus, "a sufficiently severe episode may occur as rarely as once ..., while a

relentless pattern of lesser harassment that extends over a long period of time also violates the

statute."  *Id.* at 1162 (quoting *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)).

      In analyzing whether plaintiffs have made the requisite showing, the Court "consider[s]

the work atmosphere both objectively and subjectively, looking at all the circumstances from the

perspective of a reasonable person in the plaintiff's position."  *Id.* (quoting *Herrera v. Lufkin*

*Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007)).  "The mere utterance of a statement which

'engenders offensive feelings in an employee would not affect conditions of employment to [a]

sufficiently significant degree to violate Title VII.'" *Gross v. Burggraf Const. Co.*, 53 F.3d 1531,

1537 (10th Cir. 1995) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct.

2399, 91 L.Ed.2d 49 (1986)).  "Title VII is not a code of workplace conduct, nor was it designed

to bring about a magical transformation in the social mores of American workers."  *Chavez v.*

*New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005).  Indeed, the Supreme Court has anticipated

17

that lower courts will filter out "complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

      Without deciding whether the such a cause of action exists under USERRA, the Court will consider whether the undisputed facts in this case support a claim for severe and pervasive harassment.  Plaintiff contends that unspecified "offensive statements and actions by Defendants Knipfing, Jablonski and Gonzales" are sufficient to create a hostile work environment.  *Am. Complt.* at ¶ 106.

      With respect to Defendant Knipfing, Plaintiff alleges that on May 6, 2008, she told Plaintiff to leave the Corrections Department building "in an insolent manner" and that she "yelled at Plaintiff in front of others, telling him that he "had issues" and "need[ed] help."  *Id.* at ¶¶ 35-36.  Plaintiff also claims that Defendant Knipfing asked him if he was attending therapy, *id.* at ¶ 40, and ultimately placed him on administrative leave, *id.* at ¶ 50.

      As to Defendant Jablonski, Plaintiff claims he motioned for Plaintiff to meet him outside the training in the hallway.  *Id.* at ¶¶ 32-33.  At some point, Jablonski reportedly ordered another employee to remove Plaintiff's belongings from the class.  *Id.* at ¶ 38.  After assuring Plaintiff he was "by no means in any trouble," Plaintiff claims Jablonski patted him on the back "in a condescending manner."  *Id.* at ¶ 39.  The next day, May 7, 2008, Defendant Jablonski posted the memo that Plaintiff contends resembled a fugitive posting.  *Id.* at ¶¶ 46-48.  On June 6, 2008, Jablonski issued a letter of reprimand to Plaintiff concerning the events of May 6, 2008.  *Id.* at ¶ 54.

      Plaintiff claims that Defendant Gonzales dismisses him and tells him to "file a grievance"

with the union whenever he expresses dissatisfaction with his job. *Id.* at ¶ 61.  Beyond this, Defendant Gonzales allegedly harasses Plaintiff about his dress and hair on a regular basis and, when Plaintiff asks him about distribution of overtime, tells Plaintiff not to question him. *Id.* at ¶¶ 62-63.

Even assuming that each of Plaintiff's aforementioned allegations were undisputed, they do not rise to the level of severity or pervasiveness required to support a hostile work environment claim.  For this reason, Plaintiff's claim for hostile work environment in Count VI will be dismissed, with summary judgment awarded to Defendants.

**IV.    CONCLUSION**

Having reviewed the parties' briefings and being otherwise fully informed, the Court determines there are no genuine disputes as to material issues of fact, and summary judgment should therefore be granted in favor of Defendants as to Counts I (USERRA discrimination), II (USERRA retaliation), III (discrimination because of handicap/disability), and Count VI (hostile work environment).  Summary judgment will also be granted in Defendants' favor as to Count IV insofar as this count is based upon discrimination pursuant to the NMHRA.  Summary judgment will be denied as to Count IV insofar as it is based upon retaliation pursuant to the NMHRA.

IT IS THEREFORE ORDERED that *Defendants' Motion for Summary Judgment as to Counts I, II, III, IV, and VI* (Doc. 26), filed March 20, 2009, is GRANTED in part and DENIED in part.  Counts I, II, III, and VI are dismissed with prejudice, as is Count IV insofar as it is based upon

discrimination pursuant to the NMHRA.  Count IV survives insofar as it is based upon retaliation

pursuant to the NMHRA.

Dated June 9, 2009.

s/John Edwards Conway

_____

SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:

James Otero, *pro se*
Santa Fe, NM

Counsel for Defendants:

Michael Dickman, Esq.
Santa Fe, NM